**IN THE CIRCUIT COURT OF THE**
**FIRST JUDICIAL CIRCUIT**
**JACKSON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| TERRY G. ALDRICH and<br>CINDY L. ALDRICH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Cause No.: 15-L-98 |
| v. | ) | |
| | ) | |
| SOUTHERN ILINOIS HOSPITAL SERVICES<br>et al. | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTIONS TO DISMISS**
**DIRECTED TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

**INCLUDING**

**DEFENDANTS SOUTHERN ILLINOIS HOSPITALSERVICES and SOUTHERN**
**ILLINOIS MEDICAL SERVICES JOINT MOTION TO DISMISS;**
**DEFENDANT CONSTANCE KIRBY, CRNA'S MOTION TO DISMISS;**
**DEFENDANT LYNN SUPPAN, CRNA'S MOTION TO DISMISS;**
**DEFENDANT PAMELA SPARLING, CRNA'S MOTION TO DISMISS;**
**DEFENDANT ABDUL MAJID, M.D.'S MOTION TO DISMISS; and**
**DEFENDANT BRIGHAM ANESTHESIA SOUTN LLC'S MOTION TO DISMISS**
**AND**
**ALTERNATIVE MOTION FOR LEAVE TO AMEND**

*INTRODUCTION*

This lawsuit arises from spine surgery Plaintiff Terry G. Aldrich had on October 31, 2013 at Memorial Hospital of Carbondale. Plaintiff Terry Aldrich has alleged that he was unconscious during the entire surgical procedure and so did not observe what happened or who was there and does not know the number of people attending or participating in the surgery, their names, responsibilities, occupations or employers. First Amended Complaint (hereinafter Complaint),

EXHIBIT 1, *Plaintiffs' Opposition to Motions to Dismiss* **EXHIBIT 1,**

para 20. Immediately after the surgery Mr. Aldrich noted he was partially blind and other new symptoms were noted over the course of a few days or weeks. Complaint para. 23 – 27. The visual impairment was the result of optic nerve ischemia which was caused by prolonged and/or improper positioning, poor perfusion, loss of blood and inadequate monitoring during the surgery. Complaint para 24, 29. Plaintiff Aldrich alleged other injuries, numbness and tingling in his hip and leg and foot which has been diagnosed as lateral femoral neuralgia caused by improper positioning during the long surgery. Complaint para 27, 29. When Plaintiffs filed their initial Complaint they attached the affidavit of their attorney and the written report of the surgeon, Dr. Beatty, who had reviewed certain records which were then available to the him. Dr. Beatty explained in his report that ischemic optic neuropathy and lateral femoral cutaneous neuralgia are rare complications for prone patients undergoing spine surgery under general anesthesia and it is widely accepted that such injuries will not occur if there is effective intraoperative management of the patient including proper positioning followed by observation, monitoring and attention during the surgery. Accordingly, Plaintiffs filed several affidavits made by their attorney ending with this paragraph:

Dr. Beatty has stated that injuries suffered by Plaintiff Terry Aldrich generally do not occur if there is proper positioning initially followed by observation, monitoring and attention during the surgery. The undersigned affiant therefore does certify that to that extent, at this time, Plaintiffs are relying on the doctrine of "res ipsa loquitur".

See one of the May 4, 2016 affidavits with the February 1, 2016 report of Dr. Beatty which is attached hereto and marked as Plaintiff's Ex. A. Several such affidavits were prepared and filed; the only difference is the identity of the particular defendant to which the affidavit is intended to apply.

–2–

In addition to the optic nerve ischemia resulting in partial blindness and the lateral femoral neuralgia resulting in pain, numbness and tingling of Plaintiff Terry Aldrich's leg, Plaintiffs have alleged that Mr. Aldrich suffered an aggravation of an existing cardiac condition resulting in congestive heart failure. Complaint para 26. This allegedly was caused by the inadequate evaluation of Mr. Aldrich's cardiac condition and failure to determine his fitness prior to the surgery by Defendant Dr. Taveau. See Complaint, Count VII and the report of Dr. Beatty which is part of Ex. A.

<em>RES IPSA LOQUITUR</em>

In order to rely upon the *res ipsa* doctrine in a medical malpractice case a plaintiff must allege that he was injured (1) in an occurrence that does not happen in the absence of negligence under circumstances within the Defendants' control or management. *Heastie v. Roberts*, 226 Ill.2d 515,877 N.E. 2d 1064, 1076, 315 Ill.Dec. 735 (2007); *Kolakowski v. Voris*, 83 Ill.2d 388, 47 Ill.Dec. 392, 415 N.E.2d 397 (1980). *See also Collins v. Superior Air-Ground Ambulance,* 789 N.E. 2d 394, 338 Ill. App 3d 812, 273 Ill. Dec. 494 (Ill. App 2003); *Samansky v. Rush-Presbyterian-St. Luke's Medical Center,* 208 Ill.App.3d 377, 153 Ill.Dec. 428,567 N.E.2d 386 (1990); *Adams v. Family Planning Assoc. Medical Group Inc.,* 733 N. E. 2d 766, 315 Ill. App. 3d 533, 248 Ill. Dec. 91 (2000); *Loizzo v. St. Francis Hospital*, 121 Ill.App.3d 172, 76 Ill.Dec. 677, 459 N.E.2d 314 (1984);735 ILCS 5/2-1113; 735 ILCS 5/2-622(c).

In order to prevail, the plaintiff/patient does not need to prove that the injury never happens in the absence of negligence; only that it ordinarily does not happen without negligence. *Adams v. Family Planning, supra,* 733 N. E.2d at 775. The plaintiff can proceed on a *res ipsa* theory and still establish that specific acts of negligence by individual defendants caused his

–3–

injury. *Kolakowski v. Voris*, *supra.* Sometimes it is said that where there is more than one defendant involved in the occurrence of the injury than each defendant must have joint or equal control of the situation. *Compare Samansky v. Rush-Presbyterian-St. Luke's Medical Center, supra* with *Loizzo v. St. Francis Hospital*, *supra.* The Supreme Court has explained, however, that the *res ipsa* doctrine is most appropriate in a case such as this where a plaintiff/plaintiff is injured while under general anesthesia undergoing an operation:

> We therefore hold that when a patient submits himself to the care of a hospital and its staff and is rendered unconscious for the purpose of surgery performed by independent contracting surgeons, the control necessary under res ipsa loquitur will have been met. The burden will then shift to the hospital to dispel the inference that it exercised the control necessary to the application of res ipsa loquitur.

*Kolakowski v. Voris*, *supra,* 83 Ill.2d at 397, 47 Ill.Dec. 392, 415 N.E.2d at 401. In an action against health care providers the plaintiff is expected to indicate in the affidavit provided with his Complaint that he relies upon the *res ipsa* doctrine as these Plaintiffs have done. 735 ILCS 5/2-622(c). *See* Ex. A, attached.

### *The Report of Dr. Beatty*

The report of Plaintiffs' consultant, Dr. Beatty is attached as part of Ex. A to this Memorandum it essentially reads as follows:

I am a physician licensed in Illinois to practice medicine in all of its branches and a surgeon certified by the American Board of Neurological Surgery. I have specialized in the practice of neurosurgery, including spine surgery, for years. I have, at the request of Martin L. Perron of The Perron Law Firm, P.C., reviewed certain records of examination, care and treatment provided to Mr. Terry Aldrich before and after a lumbar laminectomy done by Dr. Jon W. Taveau at Memorial Hospital of Carbondale October 31, 2013.  These materials include an Anesthesia Record and Operative Report describing the October 31, 2013 surgery and a discharge summary from Memorial Hospital of Carbondale for that admission; Progress Notes made at the Veterans Administration Medical Center before and after the October 2013 surgery; records from Barnes-Jewish Hospital in St. Louis Missouri describing a December 2013

–4–

admission; and records from Trinity Neuroscience Institute/SIH Brain & Spine Institute in Carbondale, Illinois.

Based upon these records, it is my opinion, to a reasonable degree of professional certainty, that Aldrich suffered certain injuries or damages during, or as a result of, the October 31, 2013 surgery: optic nerve ischemia causing a permanent loss of peripheral vision, left eye worse than the right; aggravation or progression of a pre-existing heart condition; and pain in the groin area, or lateral femoral cutaneous neuralgia. These conditions and injuries were due to poor perfusion of blood, positioning during the long surgery, and administration of fluids during the long surgical procedure, which lasted more than 8 hours.

Ischemic optic neuropathy is a rare complication for prone patients undergoing spine surgery under general anesthesia. It is accepted that these injuries will not occur if there is effective perioperative and intraoperative management of the patient. Such neuropathies generally do not occur if there is proper positioning initially followed by observation, monitoring and attention during the surgery. The same is true for conditions such as lateral femoral cutaneous neuralgia caused by the patient's positioning during a long surgical procedure.

The specific tasks which are part of proper intraoperative management are shared among the surgeon, anesthesiologist, anesthetists and nurses who are participating in the procedure. The primary responsibility for the care of the patient before, during and after the surgical procedure rests with the surgeon. The information available from the medical records above, including the Anesthesia Record, do not identify those in attendance with any certainty. I am informed, and I assume, that Dr. Taveau, the nurses, the CRNA's and the anesthesiologists were employed by Southern Illinois Hospital Services ( Memorial Hospital of Carbondale, Southwestern Illinois Medical Group, SIH Brain & Spine Institute and/or Trinity Neuroscience) or by Brigham Anesthesia South, LLC.

Based upon the above records it is my opinion that Dr. Taveau and the nurses, CRNA's and anesthesiologists employed by Southern Illinois Hospital Services or by Brigham Anesthesia South, failed to use such care as reasonably prudent and careful healthcare providers would have used under similar circumstances by failing to properly manage Mr. Aldrich, a prone patient under general anesthesia during a lengthy spine surgery.

Accordingly, it is my opinion to a reasonable degree of professional certainty that there is a reasonable and meritorious cause for the filing of a legal action for medical, hospital, or other healing art malpractice against the providers mentioned above.

Plaintiffs submit that this report establishes that:

1.      Dr. Beatty is a surgeon familiar with the type of spinal surgery performed by

defendant Dr. Taveau at Carbondale Memorial hospital;

–5–

2.      Dr. Beatty has knowledge of the types of injuries suffered by Plaintiff Terry Aldrich including optic nerve neuropathy causing a loss of vision and lateral femoral cutaneous neuralgia and so can understand and explain how they are caused generally, how they were caused in this instance, and that they generally do not occur if there is proper positioning of the patient followed by careful monitoring and attention during the surgical procedure.

3.      As he is a surgeon himself, Dr. Beatty is able to say that the primary responsibility for the initial positioning of the patient for the operation and the attention given to the patient during the proceeding rests with the surgeon, Defendant Dr. Taveau; other individuals participating in the procedure, such as the anesthesiologist, nurse anesthetists and nurses, also share the surgeon's responsibility.

The report of one surgeon such as Dr. Beatty is adequate to allow plaintiffs such as Mr. and Mrs. Aldrich to proceed with a lawsuit against multiple defendants when the report is sufficiently broad to cover the acts of numerous defendants and reasonably discusses the reasons supporting the conclusion that a reasonable and meritorious cause exists for the filing and prosecution of the case against each of those defendants. *See e.g. Mueller V. N. Suburban Clinic, Ltd.,* 701 N.E.2d 246, 250, 299 Ill.App.3d 568, 233 Ill.Dec. 603 (1998). No report is necessary with respect to institutional defendants such as Defendants Brigham Anesthesia South, LLC., Southern Illinois Hospital Services and Southern Illinois Medical Services whose liability depends upon the acts or omissions of their employees and agents. *Id.* This is consistent with the purpose of 735 ILCS 5/2-622 which is to provide protection for health care providers by eliminating clearly frivolous lawsuits at an early stage while not interfering with an injured patient's opportunity to pursue a legitimate remedy by imposing unwarranted or hyper-technical pleading requirements.

−6−

*Id.* Therefore, §2 – 622 is to be liberally construed:

The purpose of section 2-622 is to "reduce the number of frivolous suits that are filed and to eliminate such actions at an early stage * * *." DeLuna v. St. Elizabeth's Hospital, 147 Ill.2d 57, 65, 167 Ill.Dec. 1009, 588 N.E.2d 1139 (1992). The statute was not intended to deprive plaintiffs with legitimate claims of their right to a trial on the merits by creating insurmountable pleading hurdles. See Steinberg v. Dunseth, 276 Ill.App.3d 1038, 1042, 213 Ill.Dec. 218, 658 N.E.2d 1239 (1995); Ebbing v. Prentice, 225 Ill.App.3d 598, 601, 167 Ill.Dec. 500, 587 N.E.2d 1115 (1992). The requirements of section 2-622 should be liberally construed so that controversies may be determined according to the substantive rights of the parties.

*Mueller V. N. Suburban Clinic, Ltd., supra,* 701 N.E.2d at 250.

### *THE IDENTITY AND LOCATION OF DEFENDANTS AND THEIR EMPLOYERS*

Plaintiffs have alleged that they did not know the names, addresses or employers of individuals who attended to Plaintiff Terry Aldrich during October 31, 2013 operation at Carbondale Memorial hospital. They knew the name of the surgeon, Defendant Dr. Taveau, and they had information that he worked for, or practiced with, the SIH Brain & Spine Institute and/or Trinity Neuroscience Institute at relevant times. Plaintiffs also had reliable information that Defendant Dr. Taveau stopped practicing in the Carbondale area and had relocated his practice to other jurisdictions. At the time the lawsuit initially was filed, plaintiffs did not know with any certainty where defendant Dr. Taveau resided, worked or could be found.

Plaintiffs also knew that the operation was performed at Memorial Hospital of Carbondale. They understood that a number of individuals likely participated in the positioning of Plaintiff Terry Aldrich at the beginning of that procedure, administered anesthesia and otherwise assisted the surgeon; but they did not know who they were. Prior to the time the lawsuit was filed, Plaintiffs, by and through their attorneys or agents or otherwise, had acquired certain information

–7–

including an Anesthesia Record and Operative Report describing the October 31, 2013 surgery. This is the document which is mentioned in the report of Dr. Beatty. A copy of that three-page fill-in-the-blank form is attached hereto, marked as Ex. B. The handwritten entries on that page allowed Plaintiffs to determine with some confidence the names of some of the individuals participating in the procedure as CRNA's. The anesthesiologist is identified with initials in the upper right-hand corner of the first page, but Plaintiffs could do little more than make an informed guess as to the identity of that anesthesiologist. There is a remark in the lower right-hand corner of the third page to the effect that somebody notified someone of an event, but Plaintiffs, again, could only guess as to the name of that person. Plaintiffs believe that the anesthesiologist and CRNA's, more likely than not, were employed by the hospital or Brigham Anesthesia. Accordingly, when Plaintiffs filed their initial Complaint they named particular individuals they believed were involved as Defendants and named additional "Jane Doe" Defendants in an effort to clarify that additional or other individuals might be included as Defendants. Plaintiffs also named Southern Illinois Hospital Services and Brigham Anesthesia South, LLC. as Respondents in Discovery pursuant to § 735 ILCS 5/2-402 explaining that they needed to obtain information from these entities in order to identify whether any of the individual health care practitioners named as Defendants, other than Defendant Dr. Taveau belonged in the case and to identify additional doctors, nurse anesthetists and nurses who would have had joint control of Plaintiff Terry Aldrich during the October 31, 2013 procedure.

In due course interrogatories and requests for documents were submitted to the Respondents in Discovery. Defendant/Respondent in Discovery Brigham Anesthesia refused to formally provide any information, and its refusal was sustained by the Court. Defendant Southern

–8–

Illinois Hospital Services, as a Respondent in Discovery, did provide medical records and some interrogatory answers, but it refused to provide contact information for employees who might have been involved in the surgery and did not identify employees other than its own interrogatory answers. Defendant Southern Illinois Hospital Services stated in answers to interrogatories that despite its good faith efforts to identify each individual who was present at the surgical procedure it is possible that someone has been overlooked.

Defendant Southern Illinois Hospital Services did explain that it was not the employer of Defendant Dr. Taveau, his employer at relevant times was Defendant Southern Illinois Medical Services, a separate but apparently related corporate entity. An attorney for one of the Defendants also informed Plaintiffs' attorney that Defendant Dr. Taveau could indeed be found in Illinois.

Defendant Southern Illinois Hospital Services produced additional medical records which identified a number of individuals, including health care providers, who were present during the spine surgery of October 31, 2013. These individuals are listed on the medical records attached hereto and marked as Ex. C.

Ex. C and the other discovery responses do provide names for persons in the operating room with some indication of their occupation; but the identity of the individuals who might have improperly positioned Plaintiff Terry Aldrich or who failed to adequately monitor his vital signs is not provided. Ex. C, for example, indicates that Defendant Kirby, CRNA, who was then an anesthesia student, and Defendant Lynn Suppan, CRNA were present at the beginning of the procedure at 7:29 a.m. They may have initially positioned Plaintiff Terry Aldrich, alone or with the assistance of someone else. Plaintiffs submit this cannot be determined from the available records and a deposition likely will be needed. Defendant Dr. Majid apparently arrived at 11:18

that morning and left 29 minutes later; Plaintiffs cannot determine what he did during that time
with respect to Plaintiff's position or otherwise, or why he left. Defendant Sparling, CRNA
apparently arrived at 12:35 p.m. but the document does not indicate when she left are how long
she remained. Plaintiffs submit that they still have not discovered the identity of every individual
responsible for the partial blindness and other injuries mentioned in the Complaint.

As the 90 day "grace period" offered by §2 − 622 approached Plaintiffs requested an
extension, arranged for Dr. Beatty to review information available and secured the physician's
report or certificate pursuant to §2 − 622 mentioned below. Plaintiffs were, and are, concerned that
they correctly identify the all of the entities responsible for the proper positioning and monitoring
of Plaintiff Terry Aldrich during the October 31, 2013 spine surgery. Any individual nurses or
anesthetists as named Defendants in personally serving each individual defendant was deemed to
be less important if the employer or other responsible party was a Defendant. *See e.g.* the letters
from April 2016 attached hereto and marked as Plaintiff's Ex. D. Plaintiffs had reliable information
where Defendant Dr. Taveau, they better identified his employer at the time of the surgery, they
learned that Defendant Suppan was one of the anesthetists and they confirmed the identity of the
anesthesiologist and the other anesthetists. It did not appear that Brigham Anesthesia would
provide information as a Defendant or as a Respondent in Discovery.

Accordingly, based upon the information available, on or about May 4, 2016, Plaintiffs
requested permission to file their First Amended Complaint with the Affidavit of their attorney
and the same report signed by Dr. Beatty which together are Ex. A to this Memorandum. Defendant
Brigham Anesthesia refused to accept service for the anesthesiologist or the anesthetists. In due
course, Defendants were served. Defendant Dr. Taveau has filed his Answer and Affirmative

−10−

Defenses. The other Defendants have filed Motions attacking the First Amended Complaint which are discussed below.

### DEFENDANTS SOUTHERN ILLINOIS HOSPITALSERVICES and SOUTHERN ILLINOIS MEDICAL SERVICES JOINT MOTION TO DISMISS

Defendant Southern Illinois Hospital Services and Defendant Southern Illinois Medical Services complain that the report of Dr. Beatty is inadequate because it does not provide the names of the nurses who were in attendance, does not adequately identify the acts or omissions of any particular nurse or describe applicable standard of care. First, Plaintiffs note that one or both of these Defendants allegedly employed the surgeon, Defendant Dr. Taveau, and therefore are responsible for his acts or omissions. It is not Dr. Beatty's job to determine with any degree of certainty who employs whom or which individual is the agent or servant of another entity for purposes of *respondeat superior* liability. *Mueller V. N. Suburban Clinic, Ltd., supra.*

Defendants also complain because the nurses allegedly employed by Defendant SIHS are not individually identified. When the initial Complaint was filed, Plaintiff did not know the names of those nurses. They were provided by Defendant SIHS and are identified on Ex. C. Plant submits that it would not assist Defendant SIHS or anyone else to require Plaintiffs to obtain additional Reports attaching the list of nurses and other technicians or repeating the names of the particular individuals into the report.

This is precisely the situation contemplated by the Supreme Court when it considered the application of the *res ipsa* doctrine in medical malpractice cases:

"The present case is of a type which comes within the reason and spirit of the doctrine more fully perhaps than any other. * * * (I)t is difficult to see how the doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the

–11–

care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of someone's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability.

 *Kolakowski v. Voris*, *supra*, 415 N.E.2d at 401, quoting *Ybarra v. Spangard*, 25 Cal.2d 486, 154

P.2d 687 (1944). Plaintiffs submit that in a situation like this the report prepared by Dr. Beatty is

sufficiently detailed, especially when this is a *res ipsa* case where a patient is injured during a

surgical procedure when he is rendered unconscious due to an anesthesia:

 Because the amended complaint alleged res ipsa loquitur, a broad general conclusion that malpractice has occurred was sufficient to satisfy section 2-622 even without further mention of each defendant's involvement. (See Alford, 169 Ill.App.3d at 854, 119 Ill.Dec. 807, 523 N.E.2d 563.) To require otherwise would be contrary to the legislative intent of deciding malpractice cases on their merits (see Moss, 180 Ill.App.3d at 638, 129 Ill.Dec. 441, 536 N.E.2d 125) and would render the doctrine of res ipsa loquitur meaningless in malpractice.

*Peterson v. Hinsdale Hosp.* 599 N.E.2d 84, 89, 233 Ill.App.3d 327, 174 Ill.Dec. 538 (1992). If,

however, the Court concludes that the First Amended Complaint or the May 4, 2016 Affidavits

of Plaintiff' attorney or the report of Dr. Beatty are deficient in any manner, then Plaintiffs

request leave to file an amended Complaint, affidavit or Physician's report.

### DEFENDANT CONSTANCE KIRBY, CRNA'S MOTION TO DISMISS

Defendant Kirby requests that the Court dismissed the case for failure to obtain service

promptly in accordance with Supreme Court Rule 103(b) which reads in part as follows:

 **(b) Dismissal for Lack of Diligence.** If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of

–12–

limitations, the dismissal shall be with prejudice as to that defendant only and shall not bar any claim against any other party based on vicarious liability for that dismissed defendant's conduct. The dismissal may be made on the application of any party or on the court's own motion. In considering the exercise of reasonable diligence, the court shall review the totality of the circumstances, . . .

Defendant's argument is predicated on the notion that the statute of limitations expired exactly 2 years after the October 31, 2013 surgery and the assumption that Plaintiffs did absolutely nothing with respect to their claims against Defendant Constance Kirby from the day the original Complaint was filed until the day Defendant Kirby was served. These assertions and assumptions are not precisely accurate. Plaintiff Terry Aldrich has alleged that while his partial blindness was apparent immediately after the surgery, symptoms developed more slowly and that he did not know those injuries occurred during or because of the long surgical procedure, and so reasonably would not have known or suspected that he suffered injuries and damages due to the professional negligence of any Defendant prior to his admission to Barnes Jewish Hospital December 23, 2013. When Plaintiffs filed their initial Complaint in October 2013 they explained, via the affidavit of their attorney and their attempt to discover the names, addresses and employers of individuals involved in the October 31, 2013 operation by submitting discovery requests to Defendants SIHS and Brigham Anesthesia. Plaintiffs submit that by taking these actions and attempting to compel additional information from Defendants SIHS and Brigham Anesthesia, Plaintiffs were taking positive steps consistent with their obligations to exercise reasonable diligence under the Rules.

Defendant Constance Kirby, CRNA apparently is the "Connie Kirby SRNA" identified as an Anesthesia Student on Plaintiffs' Ex. C. Her first name can be seen on the 3-page Anesthesia Record which is Ex. B. and Plaintiffs were able to learn from publicly available information that there was a Constance Kirby practicing in Carbondale. Plaintiffs did not know for certain,

however, that this individual actually was involved in the October 31, 2013 procedure until they received discovery from Defendant SIHS. Plaintiffs agree that, in hindsight, they probably could have served Defendant Kirby with a summons sooner, but that would not have accomplished anything beneficial for them or Defendant Kirby.

### DEFENDANT LYNN SUPPAN, CRNA'S MOTION TO DISMISS DEFENDANT PAMELA SPARLING, CRNA'S MOTION TO DISMISS; DEFENDANT ABDUL MAJID, M.D.'S MOTION TO DISMISS; and DEFENDANT BRIGHAM ANESTHESIA SOUTN LLC'S MOTION TO DISMISS

Defendant Brigham Anesthesia, Defendant Dr. Majid, the anesthesiologist and Defendants Lynn Suppan and Pamela Sparling, anesthetist, all request the Court to dismiss Plaintiffs' Complaint because the report signed by Dr. Beatty and the Affidavit of Plaintiffs' attorney are insufficiently detailed. Plaintiffs submit, for the reason set out above, that the May 4, 2016 Affidavit of their attorney and the report of Dr. Beatty are sufficient for a case such as this where an anesthetized and unconscious patient suffers injuries during the long surgical procedure. *Kolakowski v. Voris*, *supra*; *Peterson v. Hinsdale Hosp., supra; Mueller V. N. Suburban Clinic, Ltd.* If, however, the First Amended Complaint, Affidavit or Physician's Report are deemed to be inadequate or incomplete in any respect, Plaintiffs request leave to file an amended Complaint, Affidavit or Physician's Report.

Defendant Dr. Majid and Defendant Pamela Sparling, CRNA contend that the claims against them should be dismissed for the alternative reason that Plaintiffs did not exercise "reasonable diligence" with respect to having them served. Plaintiffs agree they had formed a strong suspicion, or perhaps an educated guess, that these two Defendants were involved in the surgical procedure; but they did not know. For the reasons set out above, Plaintiffs submit that

–14–

their efforts to determine whether or not these individuals and others actually were participating in the surgery were reasonable alternatives to having these Defendants served sooner.

Defendant Sparling and Defendant Lynn Suppan also claim that the First Amended Complaint should be dismissed because they are "co-mingled" in a single Count with another defendant in apparent violation of 735 ILCS 5/2-603. Plaintiffs confess that this is true. Plaintiffs explained in April 2016 that they would change their proposed First Amended Complaint so it would have a separate count for each and every Defendant if any Defendant preferred. Plaintiffs make the same offer now. See the letter of April 19, 2016, which is part of Plaintiffs' Ex. D attached hereto. If it is necessary to have a separate count for each individual Defendant, Plaintiffs request that the Court grant them leave to file an additional Amended Complaint.

In addition, Defendant Suppan, CRNA complains that she was named as a Defendant after the statute of limitations expired. This again assumes that the statute expired October 31, 2015. Defendant Suppan is named in place of "Jane Doe III CRNA" described in the original Complaint as a possible anesthetist whose name Plaintiffs had not been able to discover. Plaintiffs submit that the actions they took at the time of the initial Complaint when they named two Defendants as Respondents in Discovery pursuant to § 735 ILCS 5/2-402, whether or not that was technically the correct procedure, did accomplish its purpose by identifying Defendant Suppan as one of the anesthetists involved in the operation as well as confirming the identity of the anesthesiologist and other anesthetists. Certainly the claims against Defendant Suppan, which are "co-mingled" with the claims against other CRNA Defendants arise out of the same occurrence set out in the original pleading. No effort has been made to show that Defendant

–15–

Suppan has been prejudiced by not being named before her identity was discovered. The statute of limitations does not bar Plaintiffs' claims against Defendant Suppan,

## ALTERNATIVE MOTION FOR LEAVE TO AMEND

Plaintiffs are willing to file a Second Amended Complaint to set out the claims against each individual CRNA Defendant in a separate Count if necessary. Plaintiffs submit that there First Amended Complaint along with the supporting Affidavit of their attorney and the report of Dr.Beatty are adequate in every sense. If, however, the Court is persuaded that the First Amended Complaint or its attachments are inadequate in any sense, then they pray that they be allowed to amend.

**THE PERRON LAW FIRM, P.C.**

*/s/ Martin L. Perron*

MARTIN L. PERRON, IL Bar #6240445
275 N. Lindbergh Boulevard
St. Louis, MO 63141-7809
(314) 993-4261
(314) 993-3367 Fax
mlp@perronlaw.com
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

On this 13th day of September, 2016, the undersigned certifies that a copy of the foregoing was sent by U.S. Mail, Postage prepaid and/or email to:

John C. Ryan
Kara L. Jones

−16−

Feirich Mager Green Ryan
PO Box 1570
Carbondale, IL   62903-1570
*Attorneys for Defendants Brigham Anesthesia South, LLC et al.*


Edward Bott, Jr.
Gino P. Gusmano
Greensfelder Hemker & Gale
12 Wolf Creek Drive, Suite 100
Belleville, IL 62226
*Attorneys for Defendants SIHS and SIMS*


Gregory J. Minana
Lindsay Hartman McClure
Husch Blackwell
The Plaza in Clayton
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
*Attorneys for Defendant Dr. Taveau*


Charles E. Schmidt
Phillip G. Palmer, Jr.
Brandon & Schmidt
PO Box 3898
Carbondale, IL 62902-3098
*Attorneys for Defendant Suppan, CRNA*

*/s/ Martin L. Perron*

–17–